### 41788. MENARD et al. v. FAIRCHILD et al.
(328 SE2d 721)

GREGORY, Justice.

In this workers' compensation case the State Board made an award in favor of a natural child arising out of the accidental death of his father. The Superior Court of Bibb County reversed, holding, among other things, that the termination of the father's parental

rights to the child pursuant to OCGA § 15-11-53[1] precluded an award. An application to appeal was denied by the Court of Appeals and we granted certiorari to determine if the conclusive presumption of dependency created by OCGA § 34-9-13 (b) (3)[2] is defeated by termination of parental rights under OCGA § 15-11-53. We hold that it is not.

Christopher Michael Bird, born March 1, 1971, was found to be a deprived child by the Juvenile Court of Houston County on November 19, 1979. The court terminated the rights of his natural father, Alfred Michael Bird, and his natural mother, Elizabeth Bird Hainut. OCGA §§ 15-11-51, 53. On May 21, 1980 Alfred Michael Bird was killed in an accident while working as a roofer for Robert Fairchild d/b/a Fairchild Roofing Company. The roofing was being done pursuant to a contract for the repair of Valley Brook Apartments, owned by Housing Systems, Inc. On February 25, 1981 Christopher was adopted by Allen A. Menard and Vivian Nally Menard by final order of Houston Superior Court.

A claim for workers' compensation benefits on behalf of Christopher was filed June 12, 1981. The Administrative Law Judge ruled the order terminating parental rights precluded a claim by Christopher. The State Board reversed, holding that Christopher was entitled to make the claim, and made an award to be paid by Housing Systems, Inc. as a statutory employer under the rationale of *Godbee v. Western Electric Co.*, 161 Ga. App. 731 (288 SE2d 881) (1982).

On appeal to Bibb Superior Court the Board was reversed on both issues. The court relied on *Modlin v. Black & Decker Mfg. Co.*, 170 Ga. App. 477 (317 SE2d 225) (1984), to hold Housing Systems, Inc. was not a statutory employer. The right of Christopher to a claim for benefits was decided adversely to him on the theory such rights

---

[1] OCGA § 15-11-53. "An order terminating the parental rights of a parent terminates all his rights and obligations with respect to the child and all rights and obligations of the child to the parent arising from the parental relationship, including rights of inheritance. The parent is not thereafter entitled to notice of proceedings for the adoption of the child by another nor has he any right to object to the adoption or otherwise to participate in the proceedings."

[2] OCGA § 34-9-13.

"(a) As used in this Code section, the term:

"(1) 'Child' includes stepchildren, legally adopted children, posthumous children, and acknowledged illegitimate children but does not include married children; and

"(2) 'Parent' includes stepparents and parents by adoption.

"(b) The following persons shall be conclusively presumed to be the next of kin wholly dependent for support upon the deceased employee:

"(1) A wife who had not voluntarily abandoned her husband at the time of the accident resulting in his death;

"(2) A husband who lived with his wife at the time of the accident resulting in her death, if he was then incapable of self-support and was actually dependent upon her; and

"(3) A child of the employee if:

"(A) The child is under 18; or

"(B) The child is over 18 and is physically or mentally incapable of earning a livelihood."

were terminated by the Juvenile Court in its order under OCGA § 15-11-53.

1. Our function in this case is to determine the intention of the legislature in enacting OCGA § 15-11-53. At the outset we are hesitant to attribute an intention to that body to deny a right to recover workers' compensation benefits by a child on account of his father's accidental death because a court found the father's conduct toward the child warranted a termination of parental rights. There has been no wrongdoing on the part of the child. It is tragic enough that parental ties had to be severed. It is most unlikely the legislature intended to further penalize the child by disallowing a claim arising out of his father's death.

The legislative intent is best seen by a consideration of the difference in effect between a termination of parental rights and an adoption. The termination of parental rights is designed to protect a child who has been abandoned, deprived, or unsupported. An adoption does more. A new relationship between the child and the adopting parents is created. Old ties may interfere with the new relationship.

Consider the effect of an order terminating parental rights under OCGA § 15-11-53 and compare that section with the effect of a decree of adoption under OCGA § 19-8-14 (a).[3] The former merely terminates the rights and obligations flowing between a parent and child. They remain parent and child. The latter alters their status. They are no longer parent and child. Notice that the termination statute, OCGA § 15-11-53, provides that the order terminates ". . . all rights and obligations . . . arising from the parental relationship. . . ." Then, the section goes on to remove any requirement of notice in the event of a subsequent adoption, and in doing so it is recognized that

---

[3] OCGA § 19-8-14 (a). "A decree of adoption, whether issued by a court of this state or by a court of any other jurisdiction, shall have the following effect as to matters within the jurisdiction of or before a court in this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, a decree of adoption relieves the natural parent(s) of the adopted individual of all parental rights and responsibilities and terminates all legal relationships between the adopted individual and his relatives, including his natural parent(s), so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship; and

"(2) A decree of adoption creates the relationship of parent and child between the petitioner(s) and the adopted individual, as if the adopted individual were a child of natural bodily issue of the petitioner(s). The adopted individual shall enjoy every right and privilege of a natural child of the petitioner(s); shall be deemed a natural child of the petitioner(s), to inherit under the laws of descent and distribution in the absence of a will, and to take under the provisions of any instrument of testamentary gift, bequest, devise, or legacy, whether executed before or after the adoption is decreed, unless expressly excluded therefrom; shall take by inheritance from relatives of the petitioner(s); and shall also take as a 'child' of the petitioner(s) under a class gift made by the will of a third person.

the status of parent and child continues until the adoption in that the parties are referred to as "parent" and "child." On the other hand, the adoption statute, OCGA § 19-8-14 (a) not only relieves the natural parent of all parental rights and responsibilities, but goes further and *"terminates all legal relationships* between the adopted individual and his relatives, including his natural parent(s), so that the adopted individual thereafter is a *stranger* to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments . . ." (Emphasis supplied.) After parental rights have been terminated there still exists the status of parent and child. After an adoption decree the status of parent and child no longer exists between the natural parent and child but exists between the child and the adopting parent. OCGA § 19-8-14 (a) (2).

As we view the legislative intent OCGA § 15-11-53 was aimed at putting an end to the rights and obligations between parent and child, but not as to any third party. In this case we do not deal with a right or obligation existing between parent and child. Instead, we have an obligation flowing from the parent's employer to the child which arises out of the status of parent and child, a status still in existence after a termination order. While it is true that dependency is the cornerstone for rights under workers' compensation law we hold that the conclusive presumption of dependency for those enumerated in OCGA § 34-9-13 (b) is a recognition of status and eliminates any requirement of actual dependency. Thus, the child's rights under workers' compensation are determined by his status as a child and not by actual dependency nor any other right he may have against a parent. So long as that status exists he has the rights afforded under workers' compensation.

The adoption of Christopher at a time after his natural father's death does not diminish his vested right to recover workers' compensation. That right is determined as of the date of the accident.[4] *United States Fidelity &c. Co. v. Dunbar,* 112 Ga. App. 102 (3) (143 SE2d 663) (1965).

2. The award of the State Board directed Housing Systems, Inc. as the statutory employer to pay weekly benefits to the child. The Superior Court correctly determined that Housing Systems, Inc. as a mere owner of the premises was not a statutory employer. *Manning v. Ga. Power Co.,* 252 Ga. 404 (314 SE2d 432) (1984). Under our decision the child has a valid claim but not against Housing Systems, Inc. Therefore, we direct the Superior Court to remand the case to the

---

[4] For an opinion holding that adoption terminates a child's rights under workers' compensation relating to natural parents see, *New Amsterdam Casualty Co. v. Freeland,* 216 Ga. 491 (117 SE2d 538) (1960).

State Board for further consideration with regard to the immediate employer of Alfred Michael Bird or others liable for workers' compensation benefits arising out of the death of Alfred Michael Bird.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Marshall, P. J., and Bell, J., who dissent as to Division 1 and the judgment.*

DECIDED APRIL 24, 1985.

*Walker, Richardson, Hulbert & Gray, Robert M. Richardson,* for appellants.

*Michael J. Bowers, Attorney General, Rita J. Llop, Harris, Watkins, Davis & Chambless, David B. Higdon, Hartley, O'Neal, Long & Moore, Robert L. Hartley, Jr., Walter E. Harrington, Jr., Martin, Snow, Grant & Napier, R. Napier Murphy,* for appellees.